JAMES, J.
*262 Friends of Yamhill County (FOYC) and the State of Oregon (jointly, appellants) appeal a judgment entered in a writ-of-review proceeding that affirmed Yamhill County's determination that Gordon Cook (claimant) has a vested right under section 5(3) of Ballot Measure 49 (2007) to complete a 10-lot subdivision on his property. The county and circuit court decisions at issue in this appeal were made on remand from the Supreme Court after the court's opinion in Friends of Yamhill County v. Board of Commissioners , 351 Or. 219, 264 P.3d 1265 (2011) ( Friends II ).[1]
*894 Two of our recent cases have resolved the main issues in this case, and our conclusion with respect to the second issue obviates the need to address appellants' other arguments. First, in Oregon Shores v. Board of County Commissioners , 297 Or. App. 269, 441 P.3d 647 (2019), we held that a statute requiring nonconforming uses to be continuous, ORS 215.130, and a county ordinance implementing that statute are immaterial to a claimant's Measure 49 claim when any discontinuance that occurred took place after December 6, 2007, the only date on which a vested right had to exist. See id. at 279-80, 441 P.3d 647 ("The text of section 5(3) requires a showing that a claimant's vested right existed on December 6, 2007, and no other date.") Here, as in Oregon Shores , any discontinuance that occurred took place after December 6, 2007. Consequently, we reject, without further discussion, appellants' argument that that statute and the Yamhill County ordinance implementing it apply to, and extinguish, claimant's claim under section 5(3) of Measure 49. The writ-of-review court did not err in affirming the county's determination that the statute and ordinance did not apply.
Second, in Friends of Yamhill County v. Board of Commissioners , 298 Or. App. 241, --- P.3d ---- (2019) ( Biggerstaff II ), we agreed with one of the arguments that appellants raise in this case and held that the claimants could not satisfy section 5(3) of Measure 49 because their plan, on and before December 6, 2007 (when Measure 49 took effect), was to subdivide his or her property and *263 sell buildable lots. Considering the text of section 5(3) of Measure 49, we concluded that the relief that a claimant can obtain "under section 5(3) of Measure 49 is limited to the relief that would have been allowed under a claimant's Measure 37 waivers." Id. at 250, --- P.3d ----. And, after considering the text and structure of Measure 37, the law of nonconforming uses, and the possibility of vested rights arising under Measure 37 alone, we concluded that "Measure 37 waivers did not allow [the claimants] to sell buildable lots." Id. at 258, --- P.3d ----.
Claimant in this case, like the claimants in Biggerstaff II , concedes that, up to December 6, 2007, when Measure 49 took effect, he intended to subdivide his property and sell buildable lots; he did not intend to build houses on the lots. However, as we explained in Biggerstaff II , the relief allowed under section 5(3) of Measure 49 is no broader than the relief to which a claimant was entitled under the claimant's Measure 37 waivers, and claimant's Measure 37 waivers did not allow him to sell buildable lots. Id. at 258, --- P.3d ----. Consequently, claimant does not have a vested right, for purposes of section 5(3) of Measure 49, to subdivide and build houses, because his planned development was to sell lots on which others would build houses, but that arrangement was not allowed under his Measure 37 waivers. The county misconstrued the law in concluding otherwise, and the circuit court erred in affirming the county's order.
Reversed and remanded.

For a detailed explanation of the complex legal context in which this dispute arose, as well as the facts of this case, see Friends II , 351 Or. at 222-25, 264 P.3d 1265.